IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| NANOENTEK, INC. and DIGITAL-BIO TECHNOLOGY CO., LTD.,<br><br>       Plaintiffs,<br><br>  v.<br><br>BIO-RAD LABORATORIES, INC,<br><br>       Defendant. | Case No. 2:ll-cv-00427-RBS-TEM |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**

  Plaintiffs, NanoEnTek, Inc. and Digital-Bio Technology Co., Ltd. (collectively, "Digital-Bio" or "Plaintiffs"), hereby oppose the Motion to Transfer Venue filed by Defendant Bio-Rad Laboratories, Inc. ("Bio-Rad").

**I. INTRODUCTION**

  Bio-Rad is a large multi-national corporation with "6,800 employees scattered around the globe." (Decl. of Peter J. Cuomo ("Cuomo Decl.") Ex. A, Bio-Rad's Annual Report p. 3.) Bio-Rad has substantial connections to Virginia and admits that it is subject to personal jurisdiction here. (ECF No. 8 ¶ 3.) By definition, Bio-Rad "reasonably anticipate[d] being haled into court" in Virginia. *First Am. First, Inc. v. Nat'l Ass'n of Bank Women,* 802 F.2d 1511, 1516 (4th Cir. 1986). Bio-Rad nonetheless seeks to transfer this case to its home court in the Northern District of California. Bio-Rad's motion does not account for the extraterritorial nature of electronic document production and gives little consideration whether its witnesses will actually be called to testify. Further, the deposition of such witnesses is taken typically at a location convenient to

the witness, unless otherwise agreed. Bio-Rad thus seeks transfer based on the convenience of witnesses who may not testify and the location of documents that will be produced electronically with the click of a button. This falls far short of meeting Bio-Rad's burden of proving "that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought." *Nationwide Mut. Ins. Co. v. Overlook, LLC*, No. 4:10-cv-00069, 2010 WL 2520973, at *3 (E.D. Va. June 17, 2010) (emphasis in original).

As such, the principal effect of transferring this case to Bio-Rad's home court in the Northern District of California is not to make litigation more convenient but, rather, to delay the administration of justice. The Court has already ordered that trial of this case begin before July 16, 2012. (Rule 16(B) Conference, Nov. 7, 2011.) If this case were transferred to the Northern District of California, trial would likely not occur until 2014. (Cuomo Decl. Ex. B, Federal Court Statistics, 2010, Table C-5 (reflecting that time to trial in the Northern District of California is 24 months).) Average time to disposition would more than double from 4.8 months to 11 months in the Northern District of California. (*Id.*) Although this delay may seem "only slightly longer" (Bio-Rad's Mem. Supp. Mot. Transfer Venue (ECF No. 11) at 9) to a corporate colossus like Bio-Rad, (Cuomo Decl. Ex. A, Annual Report p. 2-3 (reflecting $1.9 billion in sales)) with more than 8,000 different products, (Cuomo Decl. Ex. C, Bio-Rad 10K pp. 3-4, 19), it is an eternity to Digital-Bio, a recently formed startup bio-technology company with a small product line focused principally on products that use the patented technology. (Decl. of Chanil Chung ("Chung Decl.") ¶¶ 4-7.)

Digital-Bio reasonably and logically decided to bring this case in the Eastern District of Virginia. Digital-Bio has retained several Virginia-based witnesses for whom the Eastern District of Virginia is more convenient than the Northern District of California. (*See* Decl. of

Josephine A. Lannigan ("Lannigan Decl."); Decl. of G. Thorn McDaniel III ("McDaniel Decl."); Cuomo Decl. ¶ 14.) Bio-Rad admits to committing acts alleged to constitute infringement in this district and products manufactured by Digital-Bio have been sold throughout the state. (ECF No. 8 ¶¶ 8, 9.) Thus, there is no reason to set aside the strong presumption that the case should stay in Plaintiffs' chosen forum – the Eastern District of Virginia.

## II. FACTS

### A. Digital-Bio

Digital-Bio is a small startup biotechnology company based in Korea that sells devices for life sciences research and diagnostics.[1] Founded in 2000, Digital-Bio has grown from 10 to about 80 employees. (Chung Decl. ¶ 4.) In 2008, Digital-Bio introduced the award winning Countess® automatic cell counter. The Countess® depends on and relies on precision disposable cell counting slides (Countess® Cell Counting Chamber Slides) enabled by the technology of the patent in suit. Digital-Bio's slide-making technology, embodied by the patent at issue here, is at the core of company's product line, and a source of substantial revenue and goodwill for Digital-Bio. (*Id.* ¶ 6.)

Gross sales of Countess® slides grew steadily from their introduction in third quarter of 2008 until second quarter of 2010. (*Id.* ¶ 9.) In the third quarter of 2010, however, sales of Countess® slides began to rapidly erode. (*Id.* ¶ 10.) The decline on Countess® cell counter and Countess Cell Counting Chamber Slide sales coincides with Bio-Rad's introduction and sale of its TC-10™ Automated Cell Counter and TC-10™ Counting Slides in the third quarter of 2010. (*Id.*) Third quarter 2010 sales were off second quarter 2010 sales by almost 50%, fourth quarter

---

[1] NanoEnTek is a subsidiary of Digital-Bio Technology, Co., Ltd. and the assignee of the patent at issue, U.S. Patent No. 7,842,157 ("the '157 Patent"). Digital-Bio has granted an exclusive license under the '157 Patent to NanoEnTek, Inc. (Compl. ¶ 12.)

3

2010 sales were off second quarter 2010 sales by over 70%, and first quarter 2011 sales fell to an historic low, which was off second quarter 2010 sales by almost 80%.  (*Id.* ¶ 9.)

### B.  Bio-Rad

Contrary to the impression created by Bio-Rad's memo, Bio-Rad is not a small company for whom being hailed into Virginia would be inconvenient and unfair.  Bio-Rad is not a small, regional corporation with very few ties to Virginia.  According to Bio-Rad's own materials, Bio-Rad is a multi-billion dollar corporation with "6,800 employees scattered around the globe." (Cuomo Decl. Ex. A, Annual Report p. 3.)  Bio-Rad does significant business in Virginia.  It has significant manufacturing and research facilities in half a dozen countries (*Id.* Ex. C, Bio-Rad 10K p. 14) and distribution channels in over 30 countries (*Id.* p. 3).

### C.  Contacts with the Eastern District of Virginia

Digital-Bio has significant ties to Virginia.  Digital-Bio products have been sold, through its distributor Life Technologies, Inc., throughout Virginia.  (*See Id*. ¶ 5, Ex. D.)

Digital-Bio has retained several Virginia-based experts in connection with this litigation, including: Thorn McDaniel, of Stosch, Dacey & George, P.C and Joanne Lannigan, Director, Flow Cytometry Core, University of Virginia School of Medicine.  The Eastern District of Virginia is more convenient for both of these witnesses than is the Northern District of California.  (McDaniel Decl. ¶ 6; Lannigan Decl. ¶ 7.)  Digital-Bio has also retained a Virginia-based technical expert whose testimony may be offered depending on the issues and defenses raised by Bio-Rad.  (Cuomo Decl. ¶ 14.)

Bio-Rad likewise has significant ties to Virginia.  Bio-Rad has a registered office in Glen Allen, Virginia.  (*Id*. Ex. E.)  The State Corporation Commission's website for the Commonwealth of Virginia reflects an SCC identification number and an "active" status for that

4

office. (*Id.*) In addition to committing the acts alleged here to constitute infringement in the Commonwealth (ECF No. 8 ¶¶ 8, 9), Bio-Rad has received payments from the federal government large enough to require public disclosure for services performed in the Commonwealth of Virginia. (*Id*. Ex. F, G.) Bio-Rad's services were performed in conjunction with Virginia Commonwealth University with whom Bio-Rad has numerous contractual relations. (*Id*. Ex. H.) Bio-Rad has also retained scientists and researchers in Virginia for scientific evaluations and teaching engagements. (*See, e.g., Id*. Ex. I-K.)

### III. APPLICABLE LEGAL PRINCIPLES

"The decision whether to grant a motion to transfer venue is within the sound discretion of the district court." *Beam Laser Sys., Inc. v. Cox Commc'ns*, 117 F. Supp. 2d 515, 517 (E.D. Va. 2000) (denying motion to transfer). The factors to consider in a motion to transfer under 28 U.S.C. § 1404(a) are: "(1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice." *Samsung Elecs. Co., Ltd. v. Rambus Inc.*, 368 F. Supp. 2d 708, 715 (E.D. Va. 2005) quoting *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004). After the Court determines that the case could have been brought in the proposed transferee forum, *Fox Group, Inc. v. Cree, Inc.*, 749 F. Supp. 2d 410, 413 (E.D. Va. 2010), courts in this district consider: (1) plaintiff's choice of venue, (2) convenience of the parties and witnesses, and (3) the interests of justice. *See, e.g., Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (denying motion to transfer). In addition to weighing these three factors, the Court examines the specific facts of each case to determine whether the

litigation should be uprooted to another forum. *See Samsung Elecs.*, 368 F. Supp. 2d at 716.

## IV. ARGUMENT

### A. Plaintiffs' choice of venue should not be disturbed.

"[T]here is a strong presumption that a case should stay in the plaintiff's chosen forum." *Fox Group*, 749 F. Supp. at 416. Digital-Bio's choice of the Eastern District of Virginia is entitled to substantial weight. *See Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988) (denying motion to transfer).

Even where it "is neither the nucleus of operative facts, nor the plaintiff's home forum, . . . the plaintiff's choice of forum is certainly a relevant consideration so long as there is a connection between the forum and the plaintiff's claim that reasonably and logically supports the plaintiff's decision to bring the case in the chosen forum." *Samsung Elecs.*, 368 F. Supp. 2d at 716. Here, Bio-Rad's acts of infringement in Virginia, together with the sale of Digital-Bio's products throughout the district and Digital-Bio's retention of Virginia based witnesses constitutes a connection that reasonably and logically supports litigation in this district. As such, there is no reason to set aside the strong presumption that the case should stay in Plaintiffs' chosen forum – the Eastern District of Virginia.

### B. The location of witnesses does not justify transfer.

Bio-Rad here bears the burden to show that a transfer of venue pursuant to 28 U.S.C. § 1404(a) is warranted. *See Beam Laser Sys.*, 117 F. Supp. 2d at 518; *see also Nationwide Mut. Ins. Co.*, 2010 WL 2520973, at *3 ("[T]he 'party seeking such discretionary transfer 'bears the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought.'") (emphasis in original).

As an initial matter, Bio-Rad cannot simply assert that possible witnesses will be

6

inconvenienced if the case remains in the Eastern District of Virginia. Bio-Rad must explain not only the potential witnesses' relation to the cause of action, but why those witnesses would be inconvenienced. *See Heinz Kettler,* 750 F. Supp. 2d at 668 ("The party asserting witness inconvenience 'has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and *the degree of inconvenience*.'") (emphasis added). Bio-Rad has not done so. Bio-Rad supplied a declaration (Hutton Decl. ECF No. 11-2) reciting the names its own employees and those of its manufacturer along with general topics of which they may be knowledgeable. Bio-Rad has neither articulated which of these witnesses would be necessary witnesses at trial but unwilling to travel to Virginia, nor explained why those particular witnesses would refuse to do so.² *See Samsung Elecs.,* 386 F. Supp. 2d at 719 ("Additionally, the moving party must demonstrate 'whether that witness is willing to travel to a foreign jurisdiction.' Merely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process.") (internal citations omitted). Bio-Rad, thus, has not met its burden of demonstrating an inconvenience to potential witnesses.

Even assuming, contrary to the case law, that it were sufficient just to state that a witness resides beyond Virginia's subpoena power, the witnesses Bio-Rad identified do not present basis to transfer given the nature of this case. In patent cases, there is often little dispute as to the structure of the accused products or how the accused product is manufactured. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365 (Fed. Cir. 2002) ("litigants frequently do not dispute the structure of the accused device"). Instead, the disputed aspect of a patent

---

² Given that Bio-Rad has substantial influence on the witnesses it has identified, it seems unlikely they would refuse if asked.

7

infringement claim typically revolves around whether the undisputed structure of the accused products or the undisputed method used to manufacture the accused products meets the claim limitations of the asserted patents. *See Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) ("Whether a product or process infringes the properly construed claims of a patent, literally or under the doctrine of equivalents, is a question of fact. ... Often, as in this case, the composition of the allegedly infringing process or product is undisputed. In such a case, literal infringement collapses into claim construction … ."). This question is typically resolved by claim construction and by expert testimony. *See Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369-70 (Fed. Cir. 2004) (discussing the importance of expert testimony in patent cases involving complex technology); *Regents v. Dako North Am., Inc.*, 615 F. Supp. 2d 1087, 1099 (N.D. Cal. 2009) (noting the function-way-result analysis "question devolves into a form both familiar to- and intractable for- the courts: the clichéd battle of the experts") (internal quotations omitted). The question of patent validity can similarly be expected to turn on expert rather than fact testimony. *See, e.g., Ortho McNeil Pharm., Inc. v. Barr Labs., Inc.*, No. 03-4678, 2009 WL 2182665, at *4 (D.N.J. July 22, 2009) (explaining that "the decision on [validity] turns on the factual question of wh[at] the [patentee's] patents would have described ... to the person of ordinary skill in the art. At trial, this will be resolved by a battle of the experts.").

Here, Bio-Rad identifies three California based Bio-Rad employees, Paul Patt, Daniel Chu, and Kun Guo, as having knowledge regarding the design and development of the accused products. (ECF No. 11-2 ¶ 7.) While these three witnesses could well have information that leads to the discovery of relevant information, there is no reason presented as to why they are likely to be critical witnesses at trial for the simple reason that it is unlikely that there will be a

8

dispute as to what Bio-Rad is doing.³  Rather, the dispute here will likely be whether what Bio-Rad is doing constitutes infringement – an issue that will likely be resolved by claim interpretation and expert testimony.  Moreover, patent infringement is a strict liability offense.  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007).  Accordingly, it does not matter how or why Bio-Rad's manufacturing method was developed.  All that matters is whether the manufacturing method(s) that Bio-Rad employs during the term of the patent in suit meets the claim limitations of the patent in suit.  Again, this is a matter likely to be resolved through claim construction and expert testimony.

Similarly, Bio-Rad identifies Richard Grant, a third party witness as having knowledge of Bio-Rad's manufacturing process.  (ECF No. 11-2 ¶ 11.)  Certainly Digital-Bio will need discovery on what Bio-Rad is doing in its manufacturing process.  But by the time of trial, if this is anything like the typical patent case, that is unlikely to be in dispute.  Simply put, contrary to Bio-Rad's assertions, Mr. Grant is unlikely to be a key witness at trial.  Accordingly, the convenience of the Northern District of California to Mr. Grant, and the availability of compulsory process do not justify transfer.

Even, assuming *arguendo*, that Bio-Rad's witnesses are likely trial witnesses, Bio-Rad cannot meet its burden to justify a transfer *only* by alleging that the Eastern District of Virginia is inconvenient to Bio-Rad.  *See Heinz Kettler,* 750 F. Supp. 2d at 668 ("[T]ransfer is not appropriate where it will only serve to shift the balance of inconvenience from one party to the other.").  Here, Bio-Rad tries to argue that California is more convenient for Digital-Bio simply

---

³ Digital-Bio does not dispute that these witnesses will likely be required to participate in the discovery process through depositions.  Depositions, however, can occur anywhere and generally are at a witness convenient location.  *See XPRT Ventures, LLC v. eBay Inc.*, No. 10-595-SLR, 2011 WL 2270402, at *3 (D. Del. June 08, 2011) ("With respect to witnesses, generally the parties agree to take depositions where the witnesses are located (or the court can so order).").

because it is a shorter flight from Seoul. But this presents only part of the picture. It ignores the appreciably higher cost of lodging and other expenses likely to be incurred with travel to the Northern District of California. (Chung Decl. ¶¶ 14-16.) All things considered, Digital-Bio's employees do not consider the Northern District of California to be more convenient that the Eastern District of Virginia. (*Id*.) Transfer to California is also inconvenient for the attorneys that prosecuted the '157 Patent. (Decl. of Roger L. Browdy ¶ 4; Decl. of Jay M. Finkelstein ¶ 4; Decl. of Sheridan Neimark ¶ 4.) Moreover, Digital-Bio has retained several expert witnesses for whom Virginia is more convenient that the Northern District of California. (McDaniel Decl. ¶ 6; Lannigan Decl. ¶ 7; Cuomo Decl. ¶ 14.)

Finally, even if it were somehow determined that the Northern District of California were more convenient for some witnesses, other courts have given this factor little weight. *See, e.g., Tomita Technologies USA, LLC v. Nintendo Co., Ltd.*, No. 11 Civ. 4256, 2011 WL 4851142 at *1 (S.D.N.Y. Oct. 13, 2011) ("Where multinational corporations compete over venue in cases that transcend borders, consideration of convenience to witnesses often devolves into an absurd comparison of the costs and durations of a few flights. Moreover, since depositions may occur virtually anywhere, the convenience of witnesses becomes relevant only at trial.").

### C. The location of documents does not justify transfer.

Although the location of documentary evidence is a consideration in determining whether to transfer, *see Adiscov, LLC v. Autonomy Corp., PLC, and Recommind, Inc.*, No. 2011-cv-00201-RBS-DEM (E.D. Va. June 9, 2011) (Smith, J.) (granting transfer based in-part on location of documentary evidence), other district courts have begun to recognize that such arguments have lost considerable, if not all, force in the electronic age. As one Delaware court explained:

> In this electronic age, there are no substantial burdens associated
> with discovery or witness availability that support the need for

> transfer. With respect to discovery, documents generally are stored, transferred and reviewed electronically. It would be surprising to the court to find that sophisticated litigants, such as those at bar, still maintain their business records in hard copy, thus requiring either travel to California for review of the documents or the copying and transporting of documents. With respect to witnesses, generally the parties agree to take depositions where the witnesses are located (or the court can so order). Moreover, for those cases that get to trial, only a handful of witnesses testify live, and only a very small proportion of those documents produced during discovery are used as trial exhibits. Given these realities, this factor is outdated, irrelevant, and should be given little weight, if any, except for those rare exceptions where truly regional defendants are litigating.

*XPRT Ventures*, 2011 WL 2270402, at *3; *see also Global Décor, Inc. v. Cincinnati Ins. Co.*, No. 11-cv-02602, 2011 U.S. Dist. LEXIS 64529, at *15-16 (C.D. Cal. June 16, 2011) ("The 'ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations.'"); *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 174 (S.D.N.Y. 2009) ("[i]n today's era of photocopying, fax machines, and Federal Express, the location of the documents is not a significant factor in the convenience analysis") (internal quotations omitted).

Here, Bio-Rad admits that it stores documents electronically (Hutton Decl. ¶ 10; Bio-Rad's Mem. 7.) Digital-Bio does likewise. In the course of discovery, both parties' electronic documents will likely be imaged and then reviewed on the server of a non-party vendor for review and production. The location of the server of that vendor could be anywhere. It is thus not clear how the current location of largely electronic documents in this case should have any bearing on whether to transfer this case.

**D. The interests of justice would not be served by transfer.**

The Court will best serve the interests of justice by keeping this case in the Eastern District of Virginia. Unlike Bio-Rad, which sells thousands of products for use in life sciences

and medical research (Cuomo Decl. Ex. C at 3-4, 19), Digital-Bio is a small Korean biotech company with fewer than a dozen core products. Given the rapid deterioration of Digital-Bio's sales, (Chung Decl. ¶¶ 9,10), it needs rapid resolution of this case to obtain real justice. A delay of trial or resolution of this case by months, if not years, would cause irreparable harm to Digital-Bio's sales and goodwill in the United States. (*Id*. ¶¶ 11-13.)

Bio-Rad argues that the Northern District of California's local patent rules will facilitate a speedy resolution and argues that the average time to resolution in the Northern District of California is "only slightly longer" than in the Eastern District of Virginia. (Bio-Rad's Mem. 9.) But the statistics belie this contention about being only slightly longer; in this case the statistics show that the time to trial would be at least 3 times as long. According to a recent study of patent litigation, the median time to trial in the Northern District of California is 2.79 years, while trial in the Eastern District is set to begin in July 2012 (i.e., in about 8 months). (*See* Cuomo Decl. Ex. L, *2011 Patent Litigation Study: Patent litigation trends as the 'America Invents Act' becomes law,* PriceWaterhouseCoopers, Jan. 2010, at 28.) Even using Bio-Rad's data which includes not just patent litigation but all civil cases, the average time to trial in the Northern District of California is 24 months, 3 times the 8 months already scheduled for trial here. (*Id*. Ex. B, Federal Court Statistics, 2010, Table C-5.) The average time for disposition is also considerably longer with an average of 11 months in the Northern District of California versus 4.8 months in the Eastern District of Virginia. (*Id*.)

Moreover, the average times in the above statistics understate the magnitude of delay that would occur in this case. Here, the discovery period has already begun and the Court has set a trial date of July 16, 2012. If this case is transferred, the Northern District of California court that inherits the case would likely set a scheduling conference about a month after the transfer

12

date and a trial date, based on the averages, 24-27 months after that. Trial would not likely occur until 2014! Not only would this extend the period of infringement, it would also likely drive up the costs of litigation. This case provides a perfect example to illustrate this Court's motto: "justice delayed is justice denied." If this case is transferred, Digital-Bio will indeed be denied justice.

## CONCLUSION

Digital-Bio submits that the above discussed factors weigh heavily toward denying Bio-Rad's motion to transfer.

Dated: November 7, 2011

NANOENTEK, INC., and
DIGITAL-BIOTECHNOLOGY CO. LTD.,
By their attorneys,

s/Robert E. Scully, Jr.
Robert E. Scully, Jr. (VSB No. 19218)
Marvin Petry (VSB No. 12339)
Stites & Harbison PLLC
1199 North Fairfax Street, Suite 900
Alexandria, Virginia 22314
Telephone: (703) 739-4900
Fax: (703) 739-9577
rscully@stites.com

Of Counsel:

George W. Neuner (to be admitted *pro hac vice*)
David Cotta (to be admitted *pro hac vice*)
Adam P. Samansky (to be admitted *pro hac vice*)
EDWARDS WILDMAN PALMER LLP
111 Huntington Avenue
Boston, MA  02199-7613
Tel. 617.239.0100
Fax 617.227.4420

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th of November, 2011, a true and correct copy of the foregoing pleading or paper was served using the Court's CM/ECF system with electronic notification of such filing to the following counsel of record:

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
TROUTMAN SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1200
(804) 697-1339 (fax)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Robert E. Krebs (Pro Hac Vice to be filed)
rkrebs@nixonpeabody.com
Jennifer Hayes (Pro Hac Vice to be filed)
jenhayes@nixonpeabody.com
NIXON PEABODY LLP
2 Palo Alto Square
3000 El Camino Real, Suite 500
Palo Alto, California 94306
Telephone: (650) 320-7700
Fax: (650) 320-7701

Ronald F. Lopez (Pro Hac Vice to be filed)
rflopez@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, California 94111-3600
Telephone: (415) 984-8200
Fax: (415) 984-8300

s/Robert E. Scully, Jr.
Robert E. Scully, Jr.
Virginia Bar No. 19218
Stites & Harbison PLLC
1199 North Fairfax Street, Suite 900
Alexandria, Virginia 22314
Telephone: (703) 739-4900
Fax: (703) 739-9577
rscully@stites.com