

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

NANOENTEK, INC. and
DIGITAL-BIO TECHNOLOGY CO., LTD.,

       Plaintiffs,

v.                               CIVIL NO. 2:11cv427

BIO-RAD LABORATORIES, INC.,

       Defendant.

## MEMORANDUM OPINION AND TRANSFER ORDER

This is a patent infringement action filed by plaintiffs NanoEnTek, Inc. and Digital-Bio Technology, Ltd. (collectively "Digital-Bio") against defendant Bio-Rad Laboratories, Inc. ("Bio-Rad"). This matter comes before the court on Bio-Rad's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of California ("Motion"). The defendant's Motion to Transfer Venue is **GRANTED**.

### I.   Factual and Procedural History

#### A. Procedural History

On August 2, 2011, Digital-Bio filed this patent infringement action against Bio-Rad. In its complaint, Digital Bio alleges that Bio-Rad has been infringing U.S. Patent Number 7,842,157 (the "'157 Patent"), entitled a "Method for Bonding

Plastic Micro Chips," by using the process of one or more claims of the '157 Patent, and by making, offering to sell, selling, or using a product which is made by a process patented in the United States. See Complaint ¶¶ 10, 16, ECF No. 1. Specifically, the complaint alleges that the '157 Patent is infringed in the process of making products including the "TC10™ Automated Cell Counter" and "TC10™ Counting Slides." Id. ¶ 16. The '157 Patent is owned by Digital-Bio Technology Co., Ltd., and NanoEnTek, Inc. is the exclusive licensee of the patent. Id. ¶¶ 10-12. On October 24, 2011, Bio-Rad filed the instant Motion, seeking transfer to the Northern District of California. On November 7, 2011, Digital-Bio filed a response in opposition to the Motion, and on November 14, 2011, Bio-Rad filed its reply. Digital-Bio filed a motion for leave to file a surreply on November 16, 2011, which the court granted on November 23, 2011. Digital-Bio filed its surreply on November 28, 2011, and the defendant responded on November 30, 2011. The matter is now ripe for review.

## B. Relevant Facts

NanoEnTek, Inc. is a publicly-traded company organized under the laws of the Republic of Korea, with its principal place of business located in Seoul, Korea. Id. ¶ 5. Digital-Bio Technology Co., Ltd. is a subsidiary of NanoEnTek, Inc., and

2

is a corporation organized under the laws of the Republic of Korea, with its principal place of business also located in Seoul. Id. ¶ 6. Bio-Rad is a publically traded corporation incorporated under Delaware law, with its principal place of business in Hercules, California. See Mem. in Supp. of Mot. to Transfer Venue, Ex. 1 ¶ 3, ECF No. 11-2 ("Hutton Decl."). Bio-Rad's allegedly infringing manufacturing process is performed in part by a third party manufacturer, Grant Engineering, which is located in Point Richmond, California. See id. ¶ 11.

## II. Analysis

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In deciding whether to grant a motion to transfer venue, this court must conduct the following two inquiries: "'(1) whether the claims might have been brought in the transferee forum; and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum.'" JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 735 (E.D. Va. 2007) (quoting Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)).

## A. The Northern District of California Is a Proper Venue

The court must first determine whether this action might have been brought in the Northern District of California. Pursuant to 28 U.S.C. § 1400(b), a civil action for patent infringement may be brought in any district where the defendant resides. When the defendant is a corporation, it resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); see also Pacas v. Showell Farms, Inc., 83 F.3d 415, 1996 WL 192058, at *1 (4th Cir. 1996) (unpublished table decision). Thus, to determine whether the Northern District of California is a proper venue for this patent action, the court must determine whether Bio-Rad was subject to personal jurisdiction there at the time Digital-Bio filed this action. See Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960).

Bio-Rad's principal place of business is located in Hercules, California, which is within the Northern District of California, and has been since before commencement of this suit. See Hutton Decl. ¶ 3. Thus, as personal jurisdiction exists, Digital-Bio unquestionably could have brought this suit in that district. The Northern District of California is a "judicial district where the defendant" resides for purposes of 28 U.S.C.

4

§ 1400(b), so venue may now be transferred there pursuant to 28 U.S.C. § 1404(a), if convenience and justice so dictate.

## B. Transfer is Warranted

Having determined that the Northern District of California is a proper venue for this action, the court must next decide whether to exercise its discretion to transfer this action there.  In making this determination, the court considers the following factors: (1) the plaintiff's choice of venue; (2) the convenience of the parties and witnesses; and (3) the interest of justice.  See, e.g., Agilent Techs., Inc. v. Micromuse, Inc., 316 F. Supp. 2d 322, 326 (E.D. Va. 2004).

## 1. Plaintiff's Choice of Forum

The decision whether to grant a motion to transfer venue is within the sound discretion of the district court, see Beam Laser Sys., Inc. v. Cox Commc'ns, Inc., 117 F. Supp. 2d 515, 517 (E.D. Va. 2000), but there normally is a presumption that a case should stay in the plaintiff's chosen forum.  See, e.g., Samsung Elecs. Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 724 (E.D. Va. 2005).  However, "the plaintiff's choice of forum is not entitled to substantial weight if the chosen forum is not the plaintiff's 'home forum,' and the cause of action bears little or no relation to the chosen forum." Lycos, Inc. v. TiVo, Inc., 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) (citing Telepharmacy

5

Solutions, Inc. v. Pickpoint Corp., 238 F. Supp. 2d 741, 743 (E.D. Va. 2003)).

Bio-Rad argues that Digital-Bio's choice of forum is not entitled to substantial weight because the plaintiffs "are Korean companies with no known facilities, personnel or other relevant contacts with the Eastern District of Virginia." Mem. in Supp. of Mot. to Transfer Venue 1, ECF No. 11. The court agrees. The court initially notes that the Eastern District of Virginia is not the plaintiffs' 'home forum,' because both plaintiffs are Korean companies with no Virginia operations. Digital-Bio claims it has significant ties to Virginia, but only cites the sale of its products through a distributor in the Commonwealth and the retention of Virginia-based expert witnesses in relation to this case. See Pls.' Opp'n to Def.'s Mot. 4, ECF No. 13. The court hardly finds it necessary to detail that product sales to a forum far from entitle a party to substantial deference in its choice of venue. Expert witness retention is even less instructive, as such ties have only arisen as a result of the suit itself. Further still, foreign plaintiffs' choices of venue are generally given less deference, because the assumption that the chosen forum is convenient becomes "much less reasonable." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981).

6

Despite Digital-Bio's minimal ties to the Eastern District of Virginia, the court would still necessarily give the plaintiffs' choice of forum substantial weight if the cause of action had a substantial relation to this District.   However, the court fails to find sufficient connections.   Digital-Bio's claim that Bio-Rad has significant business connections with the forum does not inform this inquiry.[1]   Instead, Bio-Rad's relevant conduct is that which forms the basis of this suit: its alleged infringement of the '157 Patent in its methods of production, including production of the "TC10$^{TM}$ Automated Cell Counter" and "TC10$^{TM}$ Counting Slides."

The parties disagree about whether the sale of such products could potentially infringe the '157 Patent.[2]   The determination of that issue, however, does not alter the assessment of transfer.   Even assuming that Digital-Bio's assertion that such sales constitute acts of infringement is true, and that such sales occur within this District, they do

---

[1] Digital-Bio's states Bio-Rad is registered to do business in Virginia and does significant business here.  See Pls.' Opp'n to Def.'s Mot. 4-5, ECF No. 13.  While relevant for jurisdictional purposes, the defendant's general ties to the forum are not dispositive of, or carry great weight in, the venue analysis.

[2] See Pls.' Mem. of Surreply, ECF No. 32; Def.'s Opp'n Mem. to Pls.' Surreply, ECF No. 39.

not rise to the level of a strong relation with this forum.   It is not sufficient that:

> Virginia's residents purchase and use allegedly infringing products, methods, and systems from the defendants.   [T]he defendants likely have this same contact with every other state in the nation.   It is well-settled that the mere existence of limited sales activity within Virginia does not require this court to give the plaintiff's choice of forum substantial weight when balancing the convenience and justice factors.

Lycos, 499 F. Supp. 2d at 692.   Indeed, Digital-Bio goes to great pains to emphasize that Bio-Rad is a large company with not just national but global sales.   See Pls.' Opp'n to Def.'s Mot. Part 4, ECF No. 13; cf. Hutton Decl. ¶ 14 ("[O]nly a relatively small percentage of [Bio-Rad's] total customers are based in Virginia.").   Conversely, "personnel responsible for product research and development, marketing, finance and legal activity," as well as the accused manufacturing process itself, that allegedly infringed the '157 patent are located in the Northern District of California.   See Hutton Decl. ¶¶ 6, 11. Mere sales and marketing activity does not entitle Digital-Bio's choice of forum to substantial weight when none of the infringing products were developed or produced in this District. See Agilent Techs., Inc. v. Micromuse, Inc., 316 F. Supp. 2d 322, 327 (E.D. Va. 2004).   The court therefore finds that the

cause of action in this case bears little relation to the Eastern District of Virginia.

For these reasons, the court gives only slight weight to Digital-Bio's choice of forum. See, e.g., Koh, 250 F. Supp. 2d at 635 ("Thus, if there is little connection between the claims and this judicial district, that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts."); Acterna, L.L.C. v. Adtech, Inc., 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) (giving the plaintiff's choice of forum only "very slight weight" because the defendant's sales were not "unique to Virginia" and less than ten percent of total sales occurred here). The court will focus on the remaining factors in determining the propriety of transfer.

## 2.   Convenience of Parties and Witnesses

Bio-Rad argues that "[t]he factors of convenience of the parties and access to sources of proof overwhelmingly favor transfer to the Northern District of California." See Mem. in Supp. of Mot. to Transfer Venue 6, ECF No. 11. In weighing this argument, the "court considers factors such as the 'ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process.'" Lycos, 499 F. Supp. 2d at 693 (quoting Samsung

9

_Elecs. Co. v. Rambus, Inc._, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005)).[3]

At the outset, the preferred forum for patent cases is the "center of the accused activity," which is "typically where the infringing product was designed or manufactured, particularly since a claim for patent infringement arises upon the making of the accused product, without the need for an infringing sale or even placing the accused product into the stream of commerce." _USA Labs., Inc. v. Bio-Engineered Supplements & Nutrition, Inc._, No 1:09cv47, 2009 U.S. Dist. LEXIS 37797, at *4 (E.D. Va. May 4, 2009); _see also_ _GTE Wireless, Inc. v. Qualcomm, Inc._, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999). Here, record reflects that design, development, testing, and other disputed manufacturing activity occurred in California. _See_ Hutton Decl. ¶¶ 6, 11. In contrast, the court notes that no evidence, party witnesses,[4] or non-party witnesses are alleged to currently reside in the Eastern District of Virginia. The Northern District of California is clearly the "center of activity" in this case. This designation has been described as shorthand for an analysis of the convenience factors laid out below. _See_ _Koh_,

---

[3] The convenience of counsel is not relevant to this analysis. _See_ _Cognitronics Imaging Sys. v. Recognition Research Inc._, 83 F. Supp. 2d 689, 698 (E.D. Va. 2000).

[4] The court does not overlook Digital-Bio's expert witnesses, discussed _infra_ Part II.B.2.b.

250 F. Supp. 2d at 638.   Although the court fully considers the various components of these factors, the end result of the "center of activity" approach is identical to, and perhaps more straightforward than, the following analysis.

   a.   **Documentary Evidence**

   Turning first to documentary evidence, Bio-Rad posits that as the alleged infringer in this case, it will likely produce most of the documentary evidence.   See Mem. in Supp. of Mot. to Transfer Venue 6, ECF No. 11.   Bio-Rad's potentially relevant documentation will come from its principal place of business in the Northern District of California.   See Hutton Decl. ¶ 10. Digital-Bio does not contest this assertion, but instead argues that this factor should be given no weight because the documents in this case are "likely to be imaged" and "largely electronic." Pls.' Opp'n to Def.'s Mot. 11, ECF No. 13.   The court agrees that changes in technology have lessened the importance of the court's proximity to physical documentation.   However, while according this factor lessened weight, the court does not agree that simply because some of Bio-Rad's files are electronic that the location of all of the files becomes irrelevant.[5]   There can be no dispute that this factor falls completely in favor of transfer to the Northern District of California, where all

---

[5] Grant Engineering also may have documents relevant to the case located in the Northern District of California.

information related to the allegedly infringing production resides.

### b.   Party Witnesses

Next, Bio-Rad argues that its potential witnesses include employees located in the Northern District of California, whose convenience would be significantly increased by a transfer to that forum. See Mem. in Supp. of Mot. to Transfer Venue 6-8, ECF No. 11. Bio-Rad also asserts that a transfer would not shift any inconvenience to Digital-Bio, whose party witnesses will need to travel from Korea to either location. Id. at 7. Digital-Bio, conversely, asserts that this District is more convenient, both because lodging in Norfolk is more affordable, and because it has retained expert witnesses based in Virginia. Pls.' Opp'n to Def.'s Mot. 6-10, ECF No. 13.

"The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Koh, 250 F. Supp. 2d at 636. The court first notes that the convenience of party witnesses plays a reduced role in the court's analysis. See USA Labs., 2009 U.S. Dist. LEXIS 37797, at *4 ("Courts have repeatedly emphasized that in considering whether to transfer a case under 28 U.S.C.

12

§ 1404(a), the inconvenience to party witnesses is not afforded the same weight as the inconvenience to non-party witnesses."). Further, the evidence of inconvenience presented by both parties is insufficient for the court to attribute more than minimal consideration in either direction.  Still, to the minimal degree the court considers this factor, the court again must find it weighs in favor of transfer.

Bio-Rad identifies specific employees located in the Northern District of California with potentially relevant knowledge to this case.[6]  Digital-Bio objects that such witnesses are unlikely to be needed to testify at trial.  This argument highlights the tension between the need to make venue decisions early in a trial, and the need to base such decisions on the witnesses and material information that will arise later in the case.  See Affinity Memory & Micro, Inc. v. K & Q Enters., 20 F. Supp. 2d 948, 955 n.13 (E.D. Va. 1998).  Facing such a dilemma, the court can infer "that witnesses [who] are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material."  Koh, 250 F. Supp. 2d at 636-37. However, while Bio-Rad provides flight and lodging costs, it

---

[6] See Hutton Decl. ¶¶ 7-9 (naming Paul Patt, Daniel Chu, Kun Guo, Veronika Kortisova-Descamps, and Bob Thomsen as employees with information relevant to manufacturing, marketing, and financing of the accused products).

does not specify details by which the court can adequately determine the witnesses' degree of inconvenience.[7] Still, it would strain credulity for the court to not recognize that transfer of trial to their home district would minimize travel, time, and expense, to some degree, for these witnesses.

Digital-Bio, despite contesting the specificity of Bio-Rad's witness inconvenience claims, see Pls.' Opp'n to Def.'s Mot. 7, ECF No. 13, is even more vague in alleging the inconvenience of its own witnesses. While Digital-Bio claims that its employees would be inconvenienced by a transfer, it does not identify any particular employee as being likely to testify, let alone discuss the materiality of such testimony.[8] Digital-Bio's evidence of inconvenience is also limited to potentially more expensive lodging, which, even if true, does not factor in other relevant differences between the forums, for example travel costs and travel time. See generally Convergence Techs. (USA), LLC v. Microloops Corp., 711 F. Supp. 2d 626, 644-

---

[7] Information such as the certainty and length of each witness's testimony, relative absence from work, ability to travel, etc. would be needed to fully assess inconvenience. The court recognizes the difficulty in determining such considerations at this early stage, and such difficulties further support assigning this element minimal weight.

[8] Chanil Chung's declaration simply states "travel . . . is no more convenient for me and other Digital-Bio employees," without identifying any likely witnesses or their importance. Pls.' Opp'n to Def.'s Mot., Ex. 1 ¶ 14, ECF No. 13-1.

45 (E.D. Va. 2010) (finding that, when no evidence or witnesses were located in the Eastern District of Virginia, expenses for a plaintiff located in Hong Kong would not be "materially different" if the case was transferred to the Northern District of California). Therefore, the court cannot determine, based on the record, whether a change in venue will inconvenience any of Digital-Bio's likely witnesses.[9]

Further, the court does not find that Digital-Bio's decision to hire experts from the Commonwealth influences this factor. "The convenience of plaintiff's paid expert witnesses is of little moment." In re Ralston Purina Co., 726 F.2d 1002, 1006 n.6 (4th Cir. 1984); see also Lentz v. Eli Lilly & Co., 464 F. Supp. 2dd 35, 37 (D.D.C. 2006) (noting that such witnesses, "by virtue of their role as paid experts[,] must be prepared to travel to testify and are compensated for doing so"). In addition, Digital-Bio has not even indicated if all of these experts are likely witnesses or described the potential significance of their testimony. See Pls.' Opp'n to Def.'s Mot. 4, ECF No. 13. The experts, for their part, provided carbon-copy declarations that fail to describe any specific

---

[9]   Digital-Bio's brief reference to the attorneys who prosecuted the '157 patent, see Pls.' Opp'n to Def.'s Mot. 10, ECF No. 13, and their accompanying declarations are similarly insufficient to demonstrate inconvenience.

inconvenience or an unwillingness to testify in California.[10]
The court, therefore, does not consider Digital-Bio to have made
any sufficient showing of witness inconvenience. In sum, the
court minimally weighs this factor in making its determination,
but nonetheless finds it favors the Northern District of
California.

### c.   Third Party Witnesses

Courts afford greater weight to the convenience of non-
party witnesses. See Samsung, 386 F. Supp. 2d at 718. Bio-Rad
argues that its third party manufacturer, Grant Engineering, has
employees, including Richard Grant, who are located in the
Northern District of California and whose testimony will be
relevant to the trial. See Hutton Decl. ¶ 11. Digital-Bio
admits that information about the manufacturing process will be
relevant to the case, but again argues that such issues are
unlikely to require witness testimony at the trial itself. See
Pls.' Opp'n to Def.'s Mot. 9, ECF No. 13. As discussed supra,
the court can infer that "witnesses involved in the design and
manufacture of the accused products are material." Koh, 250 F.
Supp. 2d at 636-37. Likewise, there is no dispute that Grant

---

[10] See Pls.' Opp'n to Def.'s Mot., Ex. 16 ¶ 7, ECF No. 13-16
("Lannigan Declaration"); id., Ex. 18 ¶ 6, ECF No. 13-18
("McDaniel Declaration") (stating identically that "the Norfolk
Division . . . is clearly more convenient for me than . . . the
Northern District of California").

Engineering's manufacturing is relevant to this case.   As the identified third party witnesses are located in the Northern District of California, this factor weighs in favor of transfer.

### d. Compulsory Process

The availability of compulsory process is also a strong factor if witness testimony can only be compelled in the desired forum.   See Samsung, 386 F. Supp. 2d at 719.   Although Bio-Rad's potential employee and third party witnesses reside in the Northern District of California, Bio-Rad does not assert that compulsory process will be needed to secure their testimony; therefore, this element, at most, can only slightly favor transfer.   Overall, the convenience factors weigh in favor of transfer to the Northern District of California.

### 3.   Interest of Justice

The interest of justice factor "encompasses public interest factors aimed at systemic integrity and fairness."   Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (internal quotation marks and citations omitted).   The most prominent elements of systemic integrity are "judicial economy and the avoidance of inconsistent judgments."   Id. (citations omitted).   In evaluating fairness, this court considers "docket congestion, interest in having local controversies decided at home, knowledge of applicable law,

17

unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." Id. (citations omitted).

Frankly, most of these factors are neutral in the present case. Neither side has put forward any arguments about similar litigation that would raise concerns about judicial economy or inconsistent judgments. As this case arises under federal patent law, there are no potential conflicts of laws. Additionally, the Northern District of California is just as capable of applying federal patent law as this court.

Bio-Rad argues that the "interest in having local controversies decided at home" favors transfer. See Mem. in Supp. of Mot. to Transfer Venue 8, ECF No. 11. It is true that the citizens of this District have no special interest in the outcome of this case. No manufacturing occurred here, and to the extent any infringement occurred through product sales, this District is certainly not unique.[11] In contrast, should it be held liable for infringement, Bio-Rad would likely need to alter its manufacturing process and products, and could suffer economic harm that would presumably affect its employees in the Northern District of California. At a more basic level, the Northern District of California is the defendant's home forum.

---

[11] See discussion supra 7-8.

Thus, this factor supports transfer to that district.  See Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc., 1:08cv1246, 2009 U.S. Dist. LEXIS 25926, at *16 (E.D. Va. Mar. 27, 2009) (applying this factor similarly in an intellectual property dispute).

Digital-Bio claims that relative docket conditions militate against transfer because this case would progress to trial at a more rapid pace in this court than in the Northern District of California.  Pls.' Opp'n to Def.'s Mot. 12-13, ECF No. 13. However, docket conditions are only "a minor consideration" where, as here, "all other reasonable and logical factors would result in a transfer of venue."  GTE Wireless, 71 F. Supp. 2d at 520; see Cognitronics Imaging Sys., 83 F. Supp. 2d at 699 (explaining that docket conditions should not be the primary reason for declining to transfer a case).  Docket statistics also do not always tell the whole story.  See Convergence Techs., 711 F. Supp. 2d at 643 (comparing patent litigation speeds in the Eastern District of Virginia to the Northern District of California).  Taken together, the interests of justice do not strongly favor transfer or retention of this case.

### III. Conclusion

Digital-Bio's choice of forum is not entitled to substantial weight because the Eastern District of Virginia is not its home forum, it has no connection to this District, and the instant action does not have more than a minimal relation to this District. Under such circumstances, the fact that Digital-Bio chose to file in this court does not impede transfer, if the other convenience and justice factors point to another forum. See Koh, 250 F. Supp. 2d at 635. The convenience factors uniformly weigh in favor of transfer to the Northern District of California. Taken as a whole, the only factor favoring retention of this case is docket considerations, which are insufficient to prevent transfer. See Cognitronics Imaging Sys., 83 F. Supp. 2d at 699.

Accordingly, transfer to the Northern District of California, which has a stronger connection with this case, is appropriate. The defendant's Motion to Transfer Venue is **GRANTED**, and this case is hereby **TRANSFERRED** to the Northern District of California. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Transfer Order to counsel for the

parties and the Clerk of the Northern District of California,

and to effect the transfer forthwith.

   **IT IS SO ORDERED.**

                                        /s/
                                Rebecca Beach Smith
                                United States District Judge

                                REBECCA BEACH SMITH
                                UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December  2 , 2011